**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

KAMILIAH EDWARDS,

    Plaintiff,

       v.

JUDGE DEAN BUCCI, *et. al*,

    Defendants.

CIVIL ACTION
NO. 4:24-cv-00061-WMR

## **ORDER**

This matter arises out of a parental rights/child custody (domestic relations) case in the Superior Court of Paulding County. Apparently dissatisfied with the likely outcome of the custody proceedings, Plaintiff Kamiliah Edwards filed this federal action against each and every person she believes was involved in that case, asserting claims under 42 U.S.C. § 1983 and civil RICO violations under 18 U.S.C. §§ 1962(c) and 1964(c) and various state law claims. Essentially, Plaintiff alleges that Defendants have conspired together to violate her rights as a parent and to allow the child's father to engage in sexually exploitative and inappropriate acts with their minor child. Although Plaintiff has asserted federal claims in this case, her allegations can be distilled down to one basic premise—Plaintiff seeks to alter or invalidate the findings in the parental rights/child custody proceedings in state court.

1

The matter is now before the Court on the Defendants' respective motions to dismiss for lack of subject matter jurisdiction and failure to state a claim. Specifically, those motions are: Defendants Noelani Skipper & Skipper Law, LLC's Motions to Dismiss [Doc. 6; Doc. 7]; Defendants Marc Robinson and Henrickson and Sereebutra, LLC's Motion to Dismiss [Doc. 29]; Defendants Attorney General Christopher Carr and Judge Dean Bucci's Motion to Dismiss [Doc. 35]; Defendant Jerald Westmoreland's Motion to Dismiss [Doc. 38]; Defendant Sliz, Bramblett, Hudson & Associates, LLC's Motion to Dismiss [Doc. 49]; Defendants Tanya Mitchell Graham and The Law Office of Tanya Mitchell Graham's Motion to Dismiss [Doc. 74]; Defendant Adelle Crawl's Motion to Dismiss [Doc. 76]; and Defendant Ryan Bramblett's Motion to Dismiss [Doc. 93]. After considering the respective parties' arguments on each motion, the applicable law, and all appropriate matters of record, the Court **GRANTS** all of the motions to dismiss for the reasons set forth below.

## I.    FACTUAL BACKGROUND

At the time she filed this suit, Plaintiff was actively engaged in the domestic relations suit with Defendant Jerald Westmoreland (the child's biological father) involving parental rights and the custody/time-sharing arrangement of their minor child (hereinafter the "Child Custody Litigation"). After a temporary hearing in the Child Custody Litigation before Superior Court Judge Dean Bucci (a named

Defendant in this case), Plaintiff filed suit in this court.[1]  Plaintiff theorizes that she should have been more successful in the Child Custody Litigation and attributes the perceived unfairness and adverse results to a conspiracy involving everyone involved in the custody proceedings—specifically: the child's father (Jerald Westmoreland), Mr. Westmoreland's counsel (Marc Robinson), the guardian ad litem (Lani Skipper and her law firm, Skipper Law, LLC), the presiding judge (Judge Dean Bucci), Georgia's Attorney General (Christopher Carr), Plaintiff's first attorney (Ryan Bramblett and his law firm, Sliz, Bramblett, Hudson & Associates, LLC), Plaintiff's second attorney (Tanya Mitchell-Graham), and the court-appointed supervisor (Adelle Crawl). Plaintiff asserts claims under 42 U.S.C. § 1983 against Defendants Judge Bucci and Lani Skipper for civil rights violations and claims under 18 U.S.C. §§ 1962(c) and 1964(c) for civil RICO violations, as well as state law claims for negligent and intentional infliction of emotional distress, against all Defendants. [*See* Doc. 1 – Doc. 1-5].  Along with $33 million in damages, Plaintiff also seeks injunctive relief pertaining to the Child Custody Litigation. [Doc. 1-5 at 101 (Complaint p. 503)]. All Defendants have moved to dismiss the claims for lack of subject matter jurisdiction, failure to state a claim, or both.

---

[1] A final order in the State Custody Litigation has since been entered on May 6, 2024. [*See* Doc. 89-2 at 1–4].  Pursuant to that order, Defendant retained his right to secondary physical custody and joint legal custody of the minor child, along with visitation rights. [*Id.*]

## II.   DISCUSSION

The Court first addresses the various subject matter jurisdiction issues barring Plaintiff's claims and then addresses the substantive deficiencies of Plaintiff's complaint.

### A. Issues Regarding Subject Matter Jurisdiction

A complaint should be dismissed under Rule 12(b)(1) where the court lacks jurisdiction over the subject matter of the dispute. Attacks on subject matter jurisdiction may be based on a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," and for purposes of the motion, the plaintiff's allegations in the complaint are taken as true. *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). On the other hand, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quoting *Lawrence*, 919 F.2d at 1529). Under a factual attack, the presumption of truthfulness does not attach to the plaintiff's allegations. *Lawrence*, 919 F.2d at 1529. This case involves a facial attack on subject matter jurisdiction.

**1.** Lack of Subject Matter Jurisdiction Under the *Younger* Abstention Doctrine.

While federal courts are generally obligated to exercise the jurisdiction given to them, the exception established in *Younger v. Harris*, 401 U.S. 37 (1971) is one of great importance. *Adams v. Florida*, 185 Fed. Appx. 816, 816 (11th Cir. 2006) (per curiam) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003)). After reviewing the basic premise of the Complaint in this case, the Court concludes that all of Plaintiff's claims are barred by the *Younger* abstention doctrine.

Under the *Younger* abstention doctrine, federal courts should abstain from exercising jurisdiction over cases "involving pending state criminal prosecutions, pending civil proceedings that are akin to a criminal prosecution, and strictly civil proceedings which implicate state courts' important interests in administering certain aspects of their judicial systems." *Narciso v. Walker*, 811 Fed. Appx. 600, 601 (11th Cir. 2020) (internal punctuation omitted) (citing *Green v. Jefferson Cty. Comm'n*, 563 F.3d 1243, 1251 (11th Cir. 2009)). *Younger* abstention also applies to claims for injunctive relief as well as claims for declaratory judgment that pertain to state proceedings. *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261 (11th Cir. 1997).

Courts look to when the initial complaint was filed to determine whether a state court action was pending at the time. *Chestnut v. Canady*, 853 Fed. Appx. 580, 582 (11th Cir. 2021). Even when a state court action is pending at the time the federal

5

suit is filed but is resolved before the federal court rules on the issue, the *Younger* doctrine applies. *Id.* Such is the case here. The Child Custody Litigation was pending at the time this suit was filed on March 4, 2024, and a final order in those proceedings was not entered until May 6, 2024. Accordingly, the Court finds that the *Younger* doctrine governs this case and, thus, it will proceed with that analysis.[2]

"For a federal court to abstain in favor of state court proceedings, three questions must be answered in the affirmative: 'first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Narciso*, 811 Fed. Appx. at 602 (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)). Here, this Court concludes that all three questions can be answered in the affirmative. First, at the time this suit was filed, the Child Custody Litigation was pending in the Superior Court of Paulding County and all of Plaintiff's claims pertain to that custody dispute. Second, domestic relations matters are considered a state concern. *Moore v. Sims*, 442 U.S. 415, 435 (1979). Thus, the child custody issues at the forefront of this case are for the state, rather than this Court, to handle. Finally, Plaintiff's civil RICO and

---

[2] The Court recognizes that multiple defendants in this case argue that the *Rooker-Feldman* doctrine also bars Plaintiff's complaint. However, the *Rooker-Feldman* doctrine only applies when state court proceedings have ended prior to commencement of the federal suit. *Chestnut*, 853 Fed. Appx. at 582.

state law claims[3] are essentially a collateral attack on the rulings issued in the Child Custody Litigation.  Plaintiff has not shown, nor does this Court find, that she lacked an adequate opportunity to raise the issues regarding the Defendants' alleged conduct in those proceedings or on appeal.  Plaintiff has the burden of establishing that the state proceedings do not provide an adequate remedy for her claims. *See 31 Foster Children*, 329 F.3d at 1279.

The Court's conclusion as to the application of the *Younger* doctrine in this case is further supported by Eleventh Circuit precedent in a similar case.  In *Narciso*, the Eleventh Circuit affirmed the district court's application of the *Younger* doctrine where the plaintiff sought to enjoin a pending state court child custody litigation by filing a § 1983 claim in federal court against "a multitude of state and private actors" involved in the pending custody case, including the presiding judge. *Narciso*, 811 Fed. Appx. at 601.  The Eleventh Circuit in *Narciso* agreed with the district court's finding that the plaintiff's § 1983 claim was barred by the *Younger* doctrine. *Id*. at 602–03.  Based on the factual and procedural similarities between *Narciso* and the present case, this Court adheres to the Eleventh Circuit's guidance and concludes that Plaintiff's claims are barred by the *Younger* doctrine.

---

[3]  Plaintiff's state law claims for intentional and negligent of emotional distress are based primarily on the alleged harm she suffered as a result of her dissatisfaction with the legal positions and rulings in the Child Custody Litigation.

7

**2.** Domestic Relations Exception to Federal Court Jurisdiction

Additionally, this Court lacks subject matter jurisdiction under the domestic relations exception to federal court jurisdiction. As previously noted, domestic relations, including child custody disputes, are state court proceedings. *Narciso*, 811 Fed. Appx. at 602 (quoting *Moore v. Sims*, 442 U.S. 415, 435 (1979)).  The domestic relations exception barring federal courts from exercising jurisdiction over matters of divorce, child custody, or alimony has remained established and without disturbance for over a century. *Barber v. Barber*, 62 U.S. 582, 584 (1858); *In re Burrus*, 136 U.S. 586, 593–94 (1890)*; Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Based on the foregoing authority, the Court will apply the domestic relations exception to subject matter jurisdiction here.

Given that Plaintiff's claims are barred by both the *Younger* abstention doctrine and the domestic relations exception, this Court will not exercise subject matter jurisdiction in this case. Even though the Court is granting the respective motions to dismiss on this basis, the Court nonetheless elects to address the substantive shortcomings of Plaintiff's federal claims in the following sections.

**B. Failure to State a Claim Under Rule 12(b)(6)**

Rule 12(b)(6) authorizes this Court to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though the Federal Rules of Civil Procedure do not require "detailed factual allegations," they do demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* Accordingly, "'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice. *Id.* Likewise, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

**1.** Plaintiff's Failure to State a Claim Under § 1983

The Court addresses Plaintiff's § 1983 claims against the applicable Defendants, collectively. Section 1983 provides a cause of action for damages against every person who, acting under color of state law, deprives another of "rights, privileges, or immunities, secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker* v. *McCollan*, 443 U.S. 137, 144, n.3 (1979)). When a court considers a § 1983 claim, it must first identify the specific right allegedly infringed, and then determine the

9

validity of the claim "by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

In support of her § 1983 claims against Defendants Lani Skipper and Judge Dean Bucci, Plaintiff alleges that her "parental rights … are being deprived to protect Jerald [Westmoreland] from accountability" for his "grooming" and other "sexually predatory behaviors" concerning their child. [Doc. 1 at 19–20 ¶2]   Plaintiff asserts a "Deprivation of Rights" as part of her claims against Ms. Skipper and Judge Bucci. [Doc. 1-2 at 91 (Complaint p. 191 ¶ 355); Doc. 1-4 at 2 (Complaint p. 304 ¶ 584)]. Apart from the conclusory allegation that her "parental" rights are being unconstitutionally deprived, Plaintiff fails to assert any facts to support a plausible claim under § 1983 for any violation of her constitutional rights. Plaintiff presents no constitutional standard which governs her "parental rights" and puts forth no factual allegations sufficient for stating a claim under § 1983 against either defendant. Thus, the Court finds that Plaintiff's conclusory, unsupported allegations are insufficient to state a claim under § 1983 and must be dismissed under Rule 12(b)(6).

**2.** Plaintiff's Failure to State a Claim for Civil RICO Violations Under 18 U.S.C. §§ 1962(c) and 1964(c)

"A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate

acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland*, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020) (citation omitted). "If a plaintiff fails to adequately plead any one of these elements, she has failed to state a claim upon which relief may be granted, and her complaint must be dismissed." *Id.*; Fed. R. Civ. P. 12(b)(6).

Proving a pattern means showing "at least two acts of racketeering activity." 18 U.S.C. § 1961(5); O.C.G.A. § 16-14-3(4)(A); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) ("[W]hile two acts are necessary, they may not be sufficient"). The predicate acts required for a RICO claim must be related to one another and demonstrate a continuing pattern of criminal conduct. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004); *see also Cisneros*, 972 F.3d at 1216 (the RICO plaintiff must "plausibly allege that the defendant is engaged in criminal conduct of a continuing nature"). This requires pleading a "series of related predicates extending over a substantial period of time" or "the threat of continuity." *H.J. Inc. v. Nw. Bell Tele. Co.*, 492 U.S. 229, 242 (1989).

Furthermore, civil RICO claims, which are similar in kind to fraud claims, are held to the heightened pleading standard set out in Fed. R. Civ. P. 9(b). *ADA v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) ("[S]ubstantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard"). Under Rule 9(b)

"[i]n alleging fraud … a party must state with particularity the circumstances constituting fraud[.]" To comply with Rule 9(b), a plaintiff bringing civil RICO and fraud claims must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380–81 (11th Cir. 1997).

In this case, Plaintiff fails to identify the predicate acts or sufficiently allege the necessary facts to support her civil RICO claims against any of the Defendants.

### a. *Defendants Lani Skipper and Skipper Law, LLC*

In regard to her RICO claim against Defendant Lani Skipper and her law firm, Plaintiff alleges a multitude of facts surrounding the interactions between Plaintiff, her minor child, and the child's father, Defendant Jerald Westmoreland. [Doc. 1-2 at 91–101 (Complaint pp. 191–201 ¶¶355–378); Doc. 1-3 at 1–101 (Complaint pp. 202–302 ¶¶379–581); and Doc. 1-4 at 1–2 (Complaint pp. 303–04 ¶¶582–83)]. Essentially, the basis for her RICO claim is that Ms. Skipper had knowledge of Defendant Westmoreland's alleged inappropriate sexual behavior towards Plaintiff's minor child and did not, in Plaintiff's opinion, take the proper responsive action or legal position in the Child Custody Litigation. [*Id*.]   However, under Georgia law, "neither a court appointed custody evaluator nor a court appointed

12

guardian ad litem shall be subject to civil liability resulting from any act or failure to act in the performance of his or her duties unless such act or failure to act was in bad faith." O.C.G.A. § 19-9-3(a)(7).  Without showing that Ms. Skipper acted in bad faith, Plaintiff cannot hold her liable in this lawsuit merely for exercising her professional judgment as guardian ad litem in the Child Custody Litigation.

More importantly, in this voluminous section of her Complaint, Plaintiff fails to allege facts that support any of the necessary elements for a civil RICO claim against Ms. Skipper, much less plead facts concerning the alleged fraudulent conduct with the level of specificity required by Fed. R. Civ. P. 9(b). Therefore, this Court concludes that Plaintiff fails to state a viable federal civil RICO claim against Defendants Lani Skipper and Skipper Law, LLC.

### b. *Defendants Marc Robinson and Henrickson and Sereebutra, LL*

In regard to her civil RICO claims against Defendant Robinson and his law firm, Plaintiff alleges a multitude of facts concerning Mr. Robinson's client, Jerald Westmoreland.  Plaintiff's RICO claims against Mr. Robinson and his law firm arise solely out of the actions Mr. Robinson took as legal counsel for Mr. Westmoreland in the Child Custody Litigation (statements at hearings, legal positions taken in motions/briefs, etc.). [Doc. 1-2 at 22–91 (Complaint pp. 122–191 ¶¶ 213–354). As Plaintiff seeks to bring her claim against Mr. Robinson merely for the actions taken

in representing Mr. Westmoreland in the Child Custody Litigation, the Court concludes that the claims are barred by the *Noerr-Pennington* doctrine.

The *Noerr-Pennington* doctrine was announced by the Supreme Court to provide immunity from antitrust liability for parties who petition legislative officials in an effort to accomplish anticompetitive outcomes. *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). The Supreme Court later made it clear "the right to petition extends to all departments of the Government," including specifically the right to petition courts for redress. *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002).  Since then, the Supreme Court, the Eleventh Circuit, and other courts have extended *Noerr-Pennington* protection beyond the antitrust context. *Id*. (recognizing application of *Noerr-Pennin*gton immunity to claims under the National Labor Relations Act); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552 (11th Cir. 1992) (applying doctrine to Alabama Unfair Trade Practices Act); *Sabal Palm Condos. of Pine Island Ridge Ass'n v. Fischer*, No. 12-60691-Civ., 2014 WL 988767, at *22 (S.D. Fla. Mar. 13, 2014) ("Because the immunity under the *Noerr-Pennington* doctrine is based on the First Amendment right to petition—a right that is not limited to petitions involving antitrust issues—and because this right extends to petitions filed in the courts (i.e., lawsuits), this immunity also applies in other contexts"); *Vista Acquisitions, LLC v. W. Shore Walden LLC*, No. 1:22-cv-739-MLB, 2023 WL

2145515, at *3 (N.D. Ga. Feb. 23, 2023) (finding *Noerr-Pennington* immunity applied to claims based on litigation related to public zoning process and litigation related to that process).[4]

In any event, Plaintiff fails to identify any predicate acts or allege any facts to support her theory that Mr. Robinson engaged in a pattern of racketeering. Indeed, Plaintiff has failed to allege sufficient facts to support even a single element of her civil RICO claim against Mr. Robinson. Therefore, this Court concludes that Plaintiff fails to state a claim against Defendants Marc Robinson and Henrickson and Sereebutra, LLC.

### c. Defendants Ryan Bramblett and Sliz, Bramblett, Hudson & Associates, LLC

Plaintiff's Complaint also fails to state a civil RICO claim against Defendant Ryan Bramblett and his law firm, Sliz, Bramblett, Hudson & Associates, LLC. Plaintiff's allegations against Mr. Bramblett, who was her initial attorney in the Child Custody Litigation, amount to no more than dissatisfaction with his legal representation and advice. [Doc. 1-5 at 55–69 (Complaint pp. 457–71 ¶¶ 883–911)]. Dissatisfaction with an attorney's legal services is not a basis for a civil RICO claim. Plaintiff does not even allege that Defendant Bramblett committed any predicate acts

---

[4] The Court also notes that, in the context of libel and slander, the Georgia Legislature has enacted statutes which provide litigants and their counsel with immunity from civil liability based on their legal positions taken in pleadings and arguments made in judicial proceedings. *See* O.C.G.A. § 51-5-7; O.C.G.A. § 51-5-8.

or engaged in any pattern of racketeering, much less that he did so in concert with other defendants. Therefore, this Court concludes that Plaintiff fails to state a Civil Rico claim against Defendant Ryan Bramblett and his law firm, Sliz, Bramblett, Hudson & Associates, LLC.

   d. *Defendants Tanya Mitchell Graham and The Law Office of Tanya Mitchell Graham*

Plaintiff's Complaint also fails to state a civil RICO claim against Defendant Tanya Mitchell Graham and her law firm, The Law Office of Tanya Mitchell Graham. Plaintiff's underlying theory for her claims against Ms. Graham, her second attorney in the Child Custody Litigation, is the basically the same theory underlying her claims against her previous attorney, Mr. Bramblett. Essentially, she alleges various instances where Ms. Graham performed unsatisfactory legal services. [Doc. 1-5 at 26–55 (Complaint pp. 428–457 ¶¶ 835–882)]. While Plaintiff's allegations, if true, may raise questions about the quality of Ms. Graham's legal services, the alleged facts simply do not support a civil RICO claim. Plaintiff makes no attempt to allege facts to show any predicate acts or that Ms. Graham engaged in a pattern of racketeering. Therefore, this Court concludes that Plaintiff fails to state a claim against Defendant Tanya Mitchell Graham and her law firm, The Law Office of Tanya Mitchell Graham.

16

### e. Defendant Jerald Westmoreland

In support of her civil RICO claim against Defendant Jerald Westmoreland, the father of her minor child, Plaintiff alleges that he engaged in sexually exploitative and inappropriate behavior with the minor child. [Doc. 1 at 41–50 (Complaint pp. 41–50 ¶¶35–59); Doc. 1-1 at 1–50 (Complaint pp. 51–100 ¶¶60–166); and Doc. 1-2 at 1–22 (Complaint pp. 101–122 ¶¶ 167–212)]. Scattered throughout those allegations, Plaintiff also describes Mr. Westmoreland's behaviors and actions related to the ongoing child custody dispute, such as his alleged failure to follow the visitation schedule and alleged failure to pay child support. [*Id.*] Though relevant to the Child Custody Litigation, these facts do not serve as a basis for a claim for civil RICO claim.   Even assuming that the allegations of Mr. Westmoreland's inappropriate sexual behavior towards his daughter were true, those facts fail to show predicate acts or any pattern of racketeering activity involving Mr. Westmoreland and the other defendants. Thus, this Court concludes that Plaintiff's complaint fails to state a civil RICO claim against Defendant Jerald Westmoreland.

### f. Defendant Adelle Crawl

Plaintiff's civil RICO claim against Defendant Crawl relate to her role as the court-appointed supervisor for the visitation between Mr. Westmoreland and the minor child. [Doc. 1-5 at 69–93 (Complaint pp. 471–495 ¶¶ 912–964.] Essentially, Plaintiff alleges that Ms. Crawl breached her duty of care to ensure the minor child's

17

safety and wellbeing. [*Id.*] However, even assuming the truth of her allegations, Plaintiff fails to assert any facts to show that Ms. Crawl engaged in any predicate acts establishing a pattern of racketeering as required to support a RICO claim. Thus, this Court concludes that Plaintiff's has failed to state a civil RICO claim against Defendant Adelle Crawl.

g. *Defendants Judge Dean Bucci and Attorney General Christopher Carr*

As an initial matter, Plaintiff's Complaint contains no allegations against Attorney General Christopher Carr at all. [*See* Docs. 1 through 1-5 *generally*,]. And, the Court notes that, in her response to the Defendants' motion to dismiss [Doc. 42], Plaintiff apparently concedes that there is no claim against Mr. Carr, stating that "Attorney General Christopher Carr was included in the lawsuit primarily to ensure that, as a public servant, he addresses and is made aware of the injustices occurring in the state court, and to take appropriate actions to protect the public interest." [Doc 45 at 2.] Thus, the Court dismisses Mr. Carr as a party defendant in this case and hereafter addresses Plaintiff's claims only as they pertain to Judge Dean Bucci.

First and foremost, all of Plaintiff's claims against Judge Dean Bucci are barred by absolute judicial immunity. "Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal quotations omitted) (citing *Stump v.*

18

*Sparkman*, 435 U.S. 349, 356-357 (1978)). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id.* (citing *Stump*, 435 U.S. at 356). In this case, both prerequisites for the application of absolute judicial immunity are satisfied. Plaintiff's claims against Judge Bucci are all related to his rulings on motions and other matters, as well as his interaction with various parties during the Child Custody Litigation. [Docs. 1-4 at 2–100 (Complaint pp. 304–402 and 1-5 ¶¶584 –786); Doc. 1-5 at 1–26 (Complaint pp. 403–428 ¶¶ 787–834)]. These acts are functions that are normally performed by a judge, and they were performed in the scope of Judge Bucci's judicial capacity. Second, Judge Bucci did not act "in the clear absence of all jurisdiction" because the Superior Courts in Georgia are courts of general jurisdiction, which includes jurisdiction over such matters as the determination of parental rights, child custody, and child visitation. *See* Ga. Const. Art. VI, Sec. I, Par. I; *see also* O.C.G.A. § 15-6-8.

Further, even absent Judge Bucci's absolute judicial immunity, Plaintiff's complaint fails to allege facts that support his involvement in the civil RICO conspiracy. Plaintiff simply alleges that she has been mistreated and harassed by Judge Bucci and that his adverse rulings against her signify his general disdain for her as a party in the Child Custody Litigation. [*See* Docs. 1-4 at 2–100 (Complaint pp. 304–402 and 1-5 ¶¶584 –786); Doc. 1-5 at 1–26 (Complaint pp. 403–428 ¶¶ 787–834)]. Plaintiff essentially theorizes that, but for Judge Bucci's leadership role

over the defendants' alleged RICO conspiracy, the Child Custody Litigation would have resulted in the termination of Mr. Westmoreland's parental rights. [*Id.*] This theory is ludicrous at best. Therefore, even if Judge Bucci were somehow not entitled to absolute judicial immunity, Plaintiff still fails to state a plausible claim against Judge Bucci.

In sum, the Court concludes that all of Plaintiff's claims against Defendants are barred by both the *Younger* abstention doctrine and the domestic relations exception to subject matter jurisdiction. And, even if they were not barred, the federal claims would be dismissed on either immunity grounds or for failure to state a claim.

## III.    CONCLUSION

For the above reasons, it is hereby **ORDERED** that all of Defendants' Motions to Dismiss [Doc. 6; Doc. 7; Doc. 29; Doc. 35; Doc. 38; Doc. 49; Doc. 74; Doc. 76; and Doc. 93] are **GRANTED**. It is further ORDERED that all other pending motions in this case are TERMINATED AS MOOT. The Clerk is directed to close this file.

SO ORDERED, this 24th day of March, 2025.

William M. Ray II

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE